1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

| TONY GOODRUM,<br><br>                        Petitioner,<br><br>       vs.<br><br>TIMOTHY E. BUSBY, Warden,<br><br><br>                Respondent. | Civil No.       11-2262 IEG (JMA)<br><br>**ORDER:**<br><br>**(1)  DENYING REQUEST FOR EVIDENTIARY HEARING;**<br><br>**(3) DENYING REQUEST FOR DISCOVERY CONCERNING LAW ENFORCEMENT OFFICERS [ECF No. 5.]; and**<br><br>**(3) DISMISSING CASE WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.** |
|---|---|

21
22
23
24
25

On September 23, 2011, Petitioner, Tony Goodrum (hereinafter "Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court challenging his San Diego Superior Court conviction in case number SCD170068 for voluntary manslaughter and personal use of a firearm.[1]  (Pet. 1.)

26
27
28

---

[1]In March 2003, Petitioner was convicted of voluntary manslaughter with the personal use of a firearm pursuant to California Penal Code sections 192(a) & 12022.5(a)(1).  (See Reply Exhibit re Diligence 107 [ECF No. 22-2].)  Petitioner also pleaded guilty to possession of a firearm by a felon under California Penal Code section 12021(a)(2), and was sentenced to 21 years in state prison.  (Id.)

On November 9, 2011, Petitioner filed an amended Petition which is the operative pleading in this case.[2]  [ECF No. 10.]   Petitioner previously filed a Petition for Writ of Habeas Corpus in this Court in case number 07cv0752[3] challenging the same San Diego Superior Court conviction, and has been granted leave to file a second or successive petition by the Ninth Circuit Court of Appeals.   The Court now considers whether Petitioner's current application meets the standard pursuant to 28 U.S.C. § 2244 to permit Petitioner to proceed with a successive petition in this Court.  After careful review of Petitioner's Petition and exhibits[4], the Response by Respondent, Petitioner's Reply and its attachments, the Court finds that Petitioner has not met the requirements of 28 U.S.C. § 2244(b)(2)(B) for filing a second or successive habeas petition pursuant to 28 U.S.C. § 2254.

## I.   **PROCEDURAL BACKGROUND**

Petitioner previously filed a Petition for Writ of Habeas Corpus in this Court in case number 07cv0752 challenging the same San Diego Superior Court conviction for voluntary manslaughter and personal use of a firearm, which was denied on the merits on September 6, 2008.  (See Order in case no. 07cv0752 IEG (JMA) Goodrum v. Cate, ECF No. 31.)  On June 22, 2007, during the pendency of that case, Petitioner filed an Application for  Leave to File a Second or Successive Petition with the Ninth Circuit Court of Appeals.  (See Application for Leave to File Second or Successive Petition in Goodrum v. Kramer, No. 07-72512, Jun. 22, 2007.)  On September 13, 2007, the appellate court denied the application "without prejudice to refiling should petitioner receive an unfavorable disposition of the first petition that is currently pending in the district court." (See Order in Goodrum v. Kramer, No. 07-72512, Sep. 13, 2007.)  After the denial of his first federal

---

[2]For purposes of clarity the Court refers to page numbers inserted electronically upon the filing of Petitioner's First Amended Petition.

[3]The case was originally designated 07cv0752 JAH (JMA), and was subsequently transferred and re-designated 07cv0752 IEG (JMA).

[4]The Court references exhibits attached to the original petition in light of the fact that Petitioner did not re-submit those exhibits when he filed his amended petition.

1   petition and its affirmance on appeal, Petitioner filed a second Application for Leave to File

2   a Second or Successive Petition.  (See App. for Leave to File Second or Successive Pet. 4-

3   5, Goodrum v. Busby, 10-73336, Oct. 29, 2010.)  Petitioner's application was granted by

4   the Ninth Circuit Court of Appeals on August 31, 2011.  (See Goodrum v. Busby, 10-

5   73336, Aug. 31, 2011.)  Following the Ninth Circuit's order, Petitioner filed the instant

6   Petition on September 23, 2011.

7        On October 7, 2011, the Court issued an Order to Show Cause for the parties to brief

8   the narrow issue as to whether the Petition met the requirements of 28 U.S.C.

9   § 2244(b)(2)(B) for bringing a second or successive petition. [ECF No. 3.]  On January 20,

10  2012, Respondent filed a Response to Order to Show Cause. [ECF No. 16.]  Petitioner filed

11  his Reply on April 10, 2012. [ECF No. 24.]

12  **II.**   **FACTUAL BACKGROUND**

13       The Court gives deference to state court findings of fact and presumes them to be

14  correct; Petitioner may rebut the presumption of correctness, but only by clear and

15  convincing evidence.  See 28 U.S.C. § 2254(e)(1)(West 2006); see also Parke v. Raley, 506

16  U.S. 20, 35-36 (1992) (holding that findings of historical fact, including inferences properly

17  drawn from such facts, are entitled to statutory presumption of correctness).  The facts as

18  found by the state appellate court are as follows:

19       Goodrum lived with his girlfriend Ieisa Wilson, her two children, and
20  another couple in a house on Brookhaven Road. Goodrum and the victim,
    Dwayne Stamps, were friends. About a year earlier Stamps had rented a room
21  in the Brookhaven house for a few months. In the past, Goodrum and Stamps
    had argued, even to the point of pushing or shoving each other, but they had
22  never had a fist fight and Stamps had never made any threats to kill Goodrum
    or anyone else. Goodrum and Stamps had not seen each other for several
23  months. Some animosity had developed between them because Stamps had
    borrowed and not returned Wilson's car (Wilson and Goodrum viewed it as a
    theft of Wilson's car).

24
25       On September 24, 2002, Stamps had been terminated from a drug
    rehabilitation program, his girlfriend Lorraine Murray had complained about not
26  being happy with the relationship, and he had backed her vehicle into a pole or
    tree, damaging it. After stopping at a bar, Stamps and Murray drove to the
27  Brookhaven residence, arriving about 9:00 p.m. At the time of his death, about
    30 minutes later, Stamps had a blood alcohol level of .17 percent.

28  //

When Stamps and Murray arrived, the garage door to the Brookhaven residence was propped open six to seven inches with a pipe. The lights were on in the garage, which was often used by the residents of the house as an additional living space. Goodrum was inside the garage with a woman playing dominoes. Goodrum, the woman, and her friend had used methamphetamine that day "for a few hours at least." When Stamps knocked loudly on the garage door, Goodrum responded by opening the door. Stamps walked in and said he was looking for Jason Cruz who had his earring and other belongings. He was rude to the woman, suggesting in a lewd manner that he knew her and told her that if she saw Cruz to tell him that he was going to kill him.

Stamps entered the house, took Wilson into the bedroom and accused her of saying "mean things" about him. According to Wilson, Stamps threatened to kill her. When Goodrum entered the bedroom, Stamps accused Goodrum of having his diamond earring. Goodrum said the earring was in a duffel bag, which he took out of a closet, carried out to the garage, and set down in front of Murray's vehicle. Stamps and Goodrum argued in the garage and exchanged blows both in the garage and in front of Murray's vehicle. According to Goodrum, Stamps said he was going to get a gun and shoot everyone in the house.

Stamps went to Murray's vehicle and pulled out a roofing hammer, which was described as looking like a tomahawk, hatchet, or axe. According to Goodrum, Stamps threatened, "I'm gonna fuck you up. I'm gonna fuck you up." Goodrum pulled out a knife and picked up a trash can with his other hand. The men continued arguing but did not raise their weapons. Goodrum told Stamps to leave.

There were other people in the garage area, including the woman with whom Goodrum had been playing dominoes, Murray, and Goodrum's friend Howard Herring. According to some of the witnesses, things calmed down; both men put down their weapons, they hugged, Stamps apologized, and said he loved Goodrum as a brother. According to Goodrum, things did not calm down. Stamps made a comment that he was "gonna get [his] strap and shoot everybody in the house." Goodrum responded he was going into the house and when he came back he was "gonna be shootin' sparks." Goodrum retrieved a rifle from between the mattress and box springs of the bed in the master bedroom. He cocked the rifle in the bedroom.

When Goodrum entered the garage with the rifle, Stamps stood near the rear of the driver's side of a car parked in the garage. When Stamps became aware of the gun, he said something like, "Go ahead and shoot me." According to several witnesses, including neighbors, Stamps was not holding anything in his hands. A neighbor across the street saw Goodrum advance toward Stamps. Herring and Goodrum, as well as another neighbor, testified Stamps started walking toward Goodrum. Goodrum fired twice at Stamps, hitting him once in the head and once in the chest.

Herring testified that after the first shot, Stamps turned, grabbed his stomach and said something like, "I can't believe you shot me." Herring saw blood in the area of Stamps's heart. As Stamps turned, Goodrum fired a second shot and Stamps collapsed to the ground. According to Murray, the first shot hit Stamps in the face and he staggered. The second one hit him in the heart, he fell to the ground, and Goodrum was preparing to fire again when Murray shouted at him to stop.

-4-

According to Goodrum, when he entered the garage, Stamps commented in a sarcastic or mocking tone of voice, "Oh, he's got a gun. What are you gonna do with a gun?" Goodrum thought Stamps was hiding something behind his back, possibly a gun. Stamps kept advancing despite Goodrum's warning him that he was going to shoot if Stamps came any closer and that he was "a damn good aim." Goodrum fired when Stamps started moving a pipe from behind his legs. After the first shot, Stamps continued to swing the pipe up, so Goodrum fired again. A pipe was later found near Stamps's body.

Stamps died as a result of the gunshot wounds, either of which was potentially fatal. The head wound likely would have caused immediate unconsciousness and it would have been unlikely Stamps would have been able to speak or move after the wound was inflicted. The barrel of the rifle was two feet or further from the head wound when it was inflicted. In contrast, the barrel of the rifle was touching or nearly touching Stamps when the chest wound was inflicted. It is possible that if the chest wound were inflicted first that Stamps might have remained standing and able to speak.

Goodrum presented evidence that after the shooting Murray had told some people that earlier in the evening Stamps stated he thought he was going to die that night and purposely drove into ongoing traffic and hit a light pole, in an effort to kill them both. She said Stamps was upset about being terminated from the drug rehabilitation program and was afraid if he "got a dirty test" he would be sent back to jail. He told her he was not going back to jail; they would have to kill him first. She also said Stamps had grabbed a pipe and had advanced toward Goodrum. Murray denied making any of these statements.

(Response 2-3, citing <u>People v. Goodrum</u>, 2004 WL 1854188, *1 -2 (Cal. App. 4 Dist., 2004).)

## III.    DISCUSSION

A petitioner proceeding with a second or successive petition where the Ninth Circuit has granted leave to file a successive petition, must satisfy the requirements of 28 U.S.C. section 2244 or the district court shall dismiss any claim presented.  <u>See</u> 28 U.S.C. § 2244 (b)(4).  Under section 2244 (b)(2):

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless

(A) the application shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

11cv2262

1    28 U.S.C. § 2244(b)(2)(West 2006).

2         In his First Amended Petition, Petitioner includes claims asserting that: 1) his trial

3    counsel was ineffective at his preliminary hearing and trial; 2) his sentence was

4    unconstitutionally enhanced in violation of his plea agreement; and 3) the conviction

5    should be reversed under the doctrines of the "close case" and cumulative error.  (Pet. 10,

6    105, 125.)

7         As a threshold matter, Petitioner argues that section 2244 does not apply to his

8    Petition because the Ninth Circuit should have construed his initial request to file a

9    successive petition as a motion to amend the pending petition in case number 07cv0752,

10   citing Woods v. Carey, 525 F.3d 886 (9th Cir. 2008), in support.  (Reply 12.)  After

11   construing the request as a motion to amend, Petitioner contends the Ninth Circuit should

12   have transferred the action to this Court pursuant to 28 U.S.C. § 1631.[5]  (Id. at 5-6.)

13   Petitioner argues that due to the Ninth Circuit's failure to transfer the petition and its

14   misleading denial of the request to file a successive petition which actively led him to

15   believe he had to wait until the conclusion of state proceedings to amend the claims in this

16   Court,  the "instant writ [is] a timely 'first writ' not subject to (28 U.S.C. § 2244)."  (Reply

17   6.)  Further, Petitioner claims he is entitled to statutory tolling from February 10, 2005 to

18   June 13, 2007, while he exhausted the claims in state court, and that he is entitled to

19   equitable tolling from June 14, 2007 forward because he was diligent in discovering the

20   new evidence and exhausted his claims in a timely fashion.  (Reply 6, 13, 16.)

21        Alternately, if the Court were to determine that Petitioner's claims are subject to the

22   second or successive gatekeeping standard of section 2244, Petitioner argues that his claims

23   meet this standard, or the gateway standard of Schlup v. Delo, 513 U.S. 299 (1995), for

24

25        [5] Section 1631 states:

26        Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal,
          including a petition for review of administrative action, is noticed for or filed with such a court
27        and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of
          justice, transfer such action or appeal to any other such court in which the action or appeal
28        could have been brought at the time it was filed or noticed, and the action or appeal shall
          proceed as if it had been filed in or noticed for the court to which it is transferred on the date
          upon which it was actually filed in or noticed for the court from which it is transferred.
     28 U.S.C. §1631.

1  actual innocence claims, because the evidence is new and demonstrates that he is actually

2  innocent of the crime for which he was convicted.  (Reply 16; First Amended Petition

3  "Pet." 22, 37.)

4        Respondent contends that the Court should dismiss the currently pending Petition

5  because the factual predicates for Petitioner's current claims were discoverable or known to

6  Petitioner by 2005, yet he failed to present these claims in his 2007 federal petition, and has

7  not proffered any new factual predicates to support the claims.  (Response to Order to

8  Show Cause 11.)   Respondent further argues that even if Petitioner can demonstrate the

9  novelty of the factual predicates, "no new facts are of such quality that they would prevent

10  a reasonable factfinder from concluding that Goodrum is guilty."  (Id.)

11      **A.**    **Section 2244 Applies to Petition**

12        The Ninth Circuit has stated that, although AEDPA does not provide a definition of

13  what constitutes a second or successive petition, "it is clear that for a petition to be 'second

14  or successive' . . ., it must at a minimum be filed subsequent to the conclusion" of a

15  proceeding in which a final disposition has been reached.  Woods, 525 F.3d at 890 (citing

16  Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002)).  In Woods, the Ninth Circuit

17  held that the district court should have construed a second petition filed by a pro se

18  petitioner as a motion to amend the pending petition, rather than as a second or successive

19  petition, reasoning that pro se pleadings are to be liberally construed and that if the

20  petitioner had been represented by counsel, he would not have filed a second habeas

21  petition but instead would have filed a motion to amend the pending petition.  Id.

22        Unlike the petitioner in Woods who filed a second petition in the same court in

23  which his first petition was filed, Petitioner here did not attempt to file a second habeas

24  petition in this or any court, but instead requested leave to file a second or successive

25  petition in the Ninth Circuit.  The appellate court properly denied the application with

26  notice that Petitioner could re-file his request once he received a disposition on the pending

27  petition in case number 07cv0752.  (See App. for Leave to File Second or Successive Pet.

28  Goodrum v. Kramer, No. 07-72512, Jun. 22, 2007; Order Goodrum v. Kramer, No. 07-

72512, Sep. 13, 2007.)  Although courts are tasked with construing pro se pleadings liberally, the Ninth Circuit had no reason to believe Petitioner was attempting to amend his pending petition, rather than move to proceed with a second or successive petition before that court, and Woods does not provide controlling authority for that proposition. Petitioner fails to demonstrate that the appellate court erred by deciding the motion for leave to file a second petition.

Moreover, there is no merit to Petitioner's contention that the appellate court should have transferred the request to the district court to allow Petitioner to amend the pending petition in case number 07cv0752, because there was no basis for the appellate court to invoke the power of section 1631 to transfer the action.  (Reply 1.)  A court may transfer a civil action where it "finds that there is a want of jurisdiction . . . to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."  28 U.S.C §1631.  Section 1631 contemplates that a court may transfer an action when it does not have jurisdiction, but here, the Ninth Circuit had jurisdiction, and in fact was the only appropriate forum for that request, therefore transfer was not required.  See 28 U.S.C. § 2244(b)(3)(A).  Accordingly, the present Petition, which seeks to challenge the same conviction Petitioner previously challenged in case number 07cv0752, is properly considered a second or successive petition.  As such, in order to consider the Petition, Petitioner must demonstrate that he has new evidence which could not have been discovered through due diligence prior to filing his prior petition, and that the evidence demonstrates that Petitioner suffered a constitutional violation in his state court conviction.

**B.      Second or Successive Petition**

"Generally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition."  Cooper v. Calderon, 274 F.3d 1270, 1273 (9th Cir. 2001). Section 2244 does not explicitly define how a petitioner may demonstrate compliance with the section, however, the Ninth Circuit has concluded that a petitioner must do more than make another prima facie showing.  See Bible v. Schriro, 651 F.3d 1060, (9th Cir. 2011) ("A prima facie showing is a sufficient

1    showing of possible merit to warrant a fuller exploration by the district court, and we will

2    grant an application for an [second or successive] petition if it appears reasonably likely

3    that the application satisfied the stringent requirements for the filing of a second or

4    successive petition.")  Further, "[a]district court must conduct a thorough review of all

5    allegations and evidence presented by the prisoner to determine whether the motion meets

6    the statutory requirements for the filing of a second or successive motion."   United States

7    v. Villa-Gonzalez, 208 F.3d 1160, 1164-65 (9th Cir. 2000).  For instance, in order to

8    demonstrate that he has acquired new evidence, Petitioner must show he could not have

9    previously discovered the facts underlying his claim through the exercise of due diligence.

10   Babbitt v. Woodford, 177 F.3d 744, 746 (9th Cir. 1999).  It is generally held that evidence

11   discovered prior to the filing of a previous habeas petition is not considered new for

12   purposes of section 2244 because it could have been introduced in support of claims

13   contained within the prior petition, which in this case is the petition filed in case number

14   07cv0752.  See Hill v. State of Alaska, 297 F.3d 895, 898 (9th Cir. 2002) (finding second

15   or successive doctrine to be derivative of the abuse of writ doctrine which found abuse

16   when petitioner did not raise a habeas claim that could have been raised in an earlier

17   petition);  Cooper, 274 F.3d at 1275 (petition containing claim resting on facts known to

18   petitioner at the time he filed his earlier, unsuccessful habeas petition was barred under

19   second or successive doctrine); see also Randy Hertz and James S. Liebman, Federal

20   Habeas Corpus Practice and Procedure, Sixth Edition §28.3 n. 147 (Matthew Bender)

21   (multiple circuits hold that a factual predicate is considered previously discoverable if it

22   could have been discovered at the time of the previous habeas petition).

23          After careful review of Petitioner's claims and the evidence he presents in support,

24   as discussed below, the Court concludes that Petitioner has not provided any newly

25   discovered evidence supporting the following claims that he could not have previously

26   discovered through the exercise of due diligence.

27   //

28   //

### 1.      Ground One- Ineffective Assistance of Counsel

Goodrum makes a lengthy argument that his trial counsel failed to provide adequate assistance at the preliminary hearing and during trial.  (Pet. 45-139.)  In particular, Petitioner contends that trial counsel: (1) failed to conduct adequate pre-trial investigation including locating and interviewing witness Howard Herring, a.k.a. "Polo," who provided testimony about whether the victim held a weapon during the altercation, and regarding police department misconduct (id. at 47, 65-67, 73); (2)  failed to correct various inaccuracies in the probable cause affidavit including a statement from Detective Rivera that it was reported that the victim was on the ground when Petitioner fired the second shot (id. at 49, 51-53); (3) failed to investigate the presence of blood on the victim's hands (id. at 18), and (4) failed to object to the testimony of the victim's girlfriend Lorraine Murray, which was contradictory and allegedly manipulated by contact with law enforcement.  (Id. at 19-22.) Petitioner also contends that counsel's inadequate investigation regarding witnesses such as Herring allowed Detectives Rivera and Sergott to testify falsely without being impeached. (Id. at 63.)  Petitioner claims he was bound over on the strength of the testimony of witness Murray, and as well as Herring's statements to Detective Rivera, but that if counsel had conducted sufficient investigation, these witnesses would have been impeached and there would not have been enough to move forward on the charges.  (Pet. 63, 75.)  Petitioner also asserts that he received inadequate assistance during trial because counsel: (1) failed to hire a fingerprint expert to examine the metal pipe allegedly held by the victim (id. at 78, 79, 83); (2)  failed to move for a mistrial due to law enforcement's deliberate failure to preserve evidence (id. at 85), (3) failed to make a motion to seek discovery of law enforcement impeachment evidence under Pitchess v. Superior Court, 11 Cal. 3d 531 (1974)[6]; (4) failed to ensure that the jury would be instructed regarding the use of self defense within one's home to defend against an intruder  (id. at 122); and (5) failed

---

[6]Pitchess permits a defendant to move to discover information contained in law enforcement officers' personnel files which is relevant to issues in the current case, such as prior incidents of falsifying information or planting evidence.  If a defendant is entitled to such discovery, the judge conducts an in camera review of the files to determine if any discoverable information is contained therein.  Any relevant evidence is then turned over to the defendant.  See Pitchess, 11 Cal. 3d 531 (1974).

1  to conduct reasonable investigation to discover the prosecutorial misconduct arising from

2  the introduction of testimony of law enforcement personnel.  (<u>Id.</u> at 63, 65, 76.)  Petitioner

3  claims that between August 2003 and September 2005 he "obtained various documents and

4  affidavits and evidence which was not available or admissible for use on direct appeal."

5  (Pet.  37.)

6       Respondent counters that the allegedly newly discovered evidence consists largely

7  of documents that were either presented to the defense in pretrial discovery, were available

8  through due diligence by the time of conviction, or that Petitioner possessed when he filed

9  his federal petition in 2007, and therefore he fails to meet the requirements of section

10  2244(b)(2)(B)(i) regarding due diligence or discovery.  (Response 15-16.)  Respondent

11  further argues that the evidence does not satisfy section 2244(b)(2(B)(ii), and does not

12  demonstrate Petitioner's innocence.  (<u>Id.</u> at 16.)  Respondent concedes that the allegedly

13  new evidence supports Petitioner's claim that he engaged in self-defense, but argues that

14  the additional evidence would not have "altered the balance of evidence such that no

15  reasonable jury could have convicted" because the trial included conflicting evidence on

16  whether Stamps attacked Petitioner holding a metal pipe.  (<u>Id</u> at 16.)

17       This Court finds that the documents Petitioner submitted along with his First

18  Amended Petition and Reply do not contain any evidence that Petitioner could not have

19  obtained through the exercise of due diligence prior to the submission of his first federal

20  petition.  Petitioner admits as much when he states that "[b]etween the dates of Aug. 6,

21  2003, and Sept. 2005, [he] obtained various documents and affidavits and evidence which

22  was not available or admissible for use on direct appeal (NEW EVIDENCE)."  (Pet. 37.)

23  The majority of the documents Petitioner submits in support of his claims consist of police

24  reports, witness interviews, and forensic results that were part of the trial record.  (<u>See</u> Pet.

25  Exhibits, 1-126 [ECF No. 1-1.]  The only new piece of evidence that supports his current

26  claims, according to Petitioner, is the affidavit of Herring.  (<u>See</u> Affidavit re Diligence

27  Regarding Testimony of Howard Herring 4 [ECF No. 21].)

28  //

Petitioner vigorously argues that he exercised due diligence to the full extent of his abilities by writing letters to trial counsel Douglas Brown urging him to interview Herring, sending Brown information about possible locations to find Herring, requesting counsel ask Herring during trial where he was during the preliminary hearing and whether he made the statements to Detective Rivera attributed to him.  (See Affidavit re Diligence Regarding Testimony of Howard Herring 2-3.)  Petitioner further contends he requested that counsel obtain a transcript of his prior convictions, and after getting no results from counsel, hired a private investigator who located Herring's mother in Temecula and procured his affidavit, along with the a transcript of his prior convictions.  (Id. at 3-4.)  In addition, Petitioner has submitted extensive documentation, dated from 2004-2009, detailing his efforts to pursue his claims, including: (1)  numerous letters to agencies requesting assistance, including the California Innocence Project and ACLU; (2) correspondence with trial and appellate counsel, including a letter from trial counsel indicating that the defense expert was unable to find Stamps' fingerprints on the pipe; and (3)  requests for information pursuant to the Freedom of Information Act.  (See Reply Exhibits 25-199.)

The Court finds that Petitioner diligently pursued witness Herring, even when he did not receive results from trial counsel.  However, it is not enough to be diligent in discovering new evidence.  Once a petitioner discovers the factual predicate of new claims, he must put forth these claims in a timely fashion.  See Hill, 297 F.3d at 898.  Instead, here Petitioner had the affidavit of Herring for almost two years to prepare his claims for ineffective assistance of counsel before he filed his first federal petition.  Even after Petitioner submitted his first federal petition, he could have added the claims by amending that petition pursuant to Federal Rule of Civil Procedure 15.  See F.R.C.P 15(a) (allowing amendment of petition once as a matter of course prior to a responsive pleading, within 21 days of a responsive pleading, or thereafter with leave of court).  Petitioner acknowledges that in his attempt to diligently pursue these claims, he mistakenly filed a request for leave to file a second or successive petition in the Ninth Circuit.  However, as previously discussed, Petitioner's assertion that the Ninth Circuit should have liberally construed his

1   request as a motion for leave to amend his pending petition and transfer it to this Court

2   lacks merit.  Ultimately, although the Court must construe his pleadings liberally, Petitioner

3   has not met his burden of demonstrating that this evidence is newly discovered since the

4   time he filed his federal petition in case number 07cv0752.

5       Moreover, even if the facts asserted in Herring's affidavit were proven and viewed

6   in light of the evidence as a whole, the evidence does not establish by clear and convincing

7   evidence that no reasonable factfinder would have found Petitioner guilty of voluntary

8   manslaughter.[7]  28 U.S.C. § 2244(b)(2)(ii).  As the appellate court noted, a number of

9   witnesses stated that Stamps was not holding anything in his hands during the altercation,

10  while Petitioner claimed Stamps had a metal pipe in his hands, and the court of appeal

11  stated that a pipe was found near Stamps's body.  See People v. Goodrum, 2004 WL

12  1854188, *1-2 (Cal.App. 4 Dist., 2004).  The court acknowledged:

13      The focus of the trial and closing arguments was on whether Goodrum was
         justified in killing Stamps.  The jury evidently gave careful consideration to
14      the defense evidence; they rejected the prosecution's theory Goodrum had
         committed either first or second degree murder and instead found Goodrum
15      was guilty only of voluntary manslaughter.  There is ample evidence in the
         record to support the jury's conviction of voluntary manslaughter.

16  Id. at 6.

17  //

18

19      [7]In Herring's affidavit, he states he was interviewed by San Diego Police Detective Maria Rivera, on
    September 25, 2002, about the shooting involving Petitioner and victim Stamps. (Pet. Exhibit A at 3.) Herring
20  claims he told Rivera that Stamps was hiding a metal pipe behind his back "when he charged up to Mr.
    Goodrum" at the time  Petitioner shot Stamps. (Id.) When Rivera spoke to Herring, a warrant was outstanding
21  for his arrest, so Herring stated that he used his brother's name during the interview. (Id. at 3.)  When Rivera
    discovered his true name, she threatened to charge him with perjury for falsely identifying himself to a police
22  officer. (Id.)  During Rivera' second interview with Herring on October 2, 2002, she recorded the conversation
    and allegedly became hostile to Herring when he stated that Stamps held the pipe during the altercation, saying
23  he had not told her that before. (Id. at 4.)  According to Herring, he was arrested shortly thereafter and while
    he was in jail, Edward Sergott, the District Attorney's Supervising Investigator, came to see him and offered
24  Herring an early release, participation in a treatment facility and money if Herring did not testify in Petitioner's
    case. (Id. at 5.)  Herring stated that he agreed not to testify, was released from jail, and entered drug treatment
25  at "Set Free Ranch." (Id. at 6.)  While on a five day pass, Herring claims he was arrested and while he was in
    jail, Sergott and the Deputy District Attorney, N. Cooper, visited him in jail and told him that he would be
26  served with a subpoena requiring him to testify, but that he should not "mention the pipe being in Mr. Stamps
    hand when he got shot because I would 'piss-off' the detective." (Id.)  On January 4, 2003, Herring was
27  released from jail and returned to "Set Free Ranch," where Sergott and Cooper visited him. (Id. at 6.)  Sergott
    and Cooper instructed him that Rivera would not charge Herring with perjury if he did not testify that Stamps
28  was holding the pipe in his hand, warning him to "watch it" and not add anything unnecessary to his testimony.
    (Id.)  Herring testified on February 25 and 26, 2003, stating that he "didn't have a good view of Mr. Stamps"
    and that he did not see the pipe in his hand when he was shot.  (Id. at 7.)

In light of all the information, Petitioner has not demonstrated that the information contained within Herring's affidavit about Stamps advancing toward Petitioner with a metal pipe at the time he was shot, and the alleged police department misconduct, would have tipped the balance to the extent that no reasonable factfinder would have found him guilty of voluntary manslaughter.  For the foregoing reasons, the Court finds Petitioner fails to establish that he has discovered new evidence which demonstrates he suffered an unconstitutional conviction and therefore, he cannot meet the standard set forth in section 2244 to proceed with a successive petition in this Court.

### 2.   Ground Two- Unlawful Sentence Enhancement

In Ground Two, Petitioner claims that his sentence is unlawful because : (1) the sentence enhancements were illegal because his prior conviction was reduced to a misdemeanor when he was committed to the California Youth Authority, and (2) his sentence violates the terms of his 1981 negotiated plea stating that his 1981 conviction would be treated as a misdemeanor.  (Pet. 140.)   Petitioner claims he has acquired new evidence which supports this claim.   In his Reply, Petitioner outlines the chronological history regarding when he obtained the documents that support this claim, beginning in July 2003, with the receipt of a letter from his appellate counsel, and concluding with a letter Petitioner received from trial counsel in December 2004.  (Reply 33.)  Petitioner also claimed that neither trial counsel or appellate counsel had his priors transcript, but that a retained investigator he was able to locate it in March 2004.  (Id. at 34.)

Respondent counters that "the operative facts for ground two all involve either (1) the nature of his conviction and pleas bargain related to the 1981 conviction, or (2) the characterization and use of that conviction to increase his current sentence."  (Response at 13-14.)  According to Respondent, Petitioner knew all the relevant facts pertaining to this claim before his state conviction became final, and in advance of his filing the first petition in this Court in 2007, and the information cannot qualify as "new" evidence under 28 U.S.C. 2244 (b)(2)(B).  (Id. at 14.)  As claims raised in a second or successive petition also must demonstrate "innocence of the underlying offense," Respondent argues that facts that

speak only to the propriety of the sentence and are "unrelated to guilty or innocence" are outside the scope of section 2244, citing <u>Greenawalt v. Stewart</u>, 105 F.3d 1268, 1277 (9th Cir. 1997). (<u>Id</u>. at 18.)

The evidence cited here is not newly discovered, as it is clear Petitioner acquired the evidence between 2003 and 2004, well before filing his federal petition in 2007. Although the Court finds that Petitioner acted with industry and diligence in procuring his priors transcript by hiring a private investigator when trial counsel failed to locate the records, he did not utilize that information to bring his present challenge for almost three years. In addition, the reasoning of <u>Greenawalt</u> is persuasive in light of the fact that section 2244(b)(2)(b) requires not just that a prisoner demonstrate the evidence is newly discovered, but that such evidence can prove he is not guilty of the charged crime. Such an inquiry goes only to guilt or innocence, not claims related to sentencing as this claim does. <u>See</u> <u>Greenawalt</u>, 105 F.3d at 1277. Accordingly, Petitioner has not met the threshold requirement of section 2244(b)(2)(B) for filing a second or successive petition containing this claim.

### 3.      Ground Three- Cumulative Error

Petitioner contends that counsel made multiple errors in the pre-trial and trial stages of his case, and because it was a close case, the cumulative effect of the errors resulted in his conviction. (Pet. 160.) According to Goodrum, his trial counsel's ineffective assistance "left him powerless and unarmed againts [sic] the prosecutions perjury, evidence destruction and fabrication" and that he was arrested, arraigned and tried as a result of those multiple errors. (Reply 27.) Respondent argues that this claim does not rely on any evidence that was not available prior to Petitioner's filing of the petition in case number 07cv0752 in 2007, and therefore, Petitioner cannot qualify for filing a second or successive petition. (Response at 17.)

In light of the finding that Petitioner has not demonstrated the evidence supporting his ineffective assistance of counsel claim or illegal sentence enhancement claim is newly discovered, he cannot proceed on a claim of cumulative error in a successive petition.

**C.    Actual Innocence**

Petitioner argues that he is actually innocent of the crime of voluntary manslaughter, and that his Sixth Amendment right to effective assistance of counsel was violated due to multiple trial counsel errors.  (Reply 9.)   Although he has not developed this argument in great detail, Petitioner contends that his claims can meet the gateway standard of <u>Schlup</u> because he is asserting that "he is actually innocent of the crime and enhancements for which he is convicted," and asserts a constitutional violation.  (<u>Id</u>. at 9.)  Petitioner notes it is unclear whether the standard of section 2244(b)(2)(B)(i)&(ii) or <u>Schlup</u> applies to successive claims.  (<u>Id</u>.)

It is unclear whether a federal habeas court must analyze Petitioner's claims under both section 2244 and <u>Schlup</u> in a case in which the appellate court has granted leave for the petitioner to file a second or successive petition that includes a claim of actual innocence.  <u>See</u> <u>Cooper v. Woodford</u>, 358 F.3d 1117, 1118-19 (9th Cir. 2004) (court refrained from deciding whether <u>Schlup</u> standard or standard of 28 U.S.C. § 2244(b)(2)(B) applied where capital prisoner requested permission to file second or successive petition that raised claim of actual innocence along with <u>Brady</u> claim, finding under either standard petitioner was entitled to file successive petition).  In an abundance of caution, the court will do as other courts have done and conduct the analysis under the <u>Schlup</u> standard, in addition to the above discussion of section 2244(b)(2)(B).

In <u>Schlup</u>, the petitioner claimed he was actually innocent of the murder for which he was convicted, and that his conviction was obtained as a result of the withholding of evidence by the prosecution in violation of <u>Brady</u>, and in violation of his right to the effective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Schlup</u>, 513 U.S. at 307.  The Court noted that because the petitioner had failed to establish cause and prejudice sufficient to overcome a procedural default, he would be able to "obtain review of his constitutional claims only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  <u>Id</u>. at 314-15, quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991).  The <u>Schlup</u> Court noted that because the claim for relief

at issue "depends critically on the validity of his <u>Strickland</u> and <u>Brady</u> claims . . . Schlup's claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" <u>Schlup</u>, 513 U.S. at 315, quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993) (same). The Supreme Court has therefore made clear that an assertion of actual innocence is not itself a constitutional claim, but a gateway available to have otherwise barred claims considered on the merits. <u>Id.</u>; <u>see also</u> <u>House v. Bell</u>, 547 U.S. 518, 539 (2006) (noting that the case at hand involved a "federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence.")

"In order to pass through <u>Schlup</u>'s gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>Majoy v. Roe</u>, 296 F.3d 770, 775-76 (9th Cir. 2003), quoting <u>Schlup</u>, 513 U.S. at 327. The inquiry requires more than the court determining whether it has confidence in the outcome of the trial. <u>Johnson v. Knowles</u>, 541 F.3d 933, 937 (9th Cir. 2008). Passage through the narrow <u>Schlup</u> portal, "requires a petitioner 'to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" <u>Lee v. Lampert</u>, 653 F.3d 929, 938 (9th Cir. 2011) , citing <u>Schlup</u>, 513 U.S. at 324).

The Ninth Circuit has noted that:

> The AEDPA requirements for a second or successive application are stricter than the <u>Schlup</u> standard in two ways. First, § 2244(b)(2)(B)(i) requires that 'the factual predicate for the claim could not have been discovered previously through the exercise of due diligence.' There is no requirement under <u>Schlup</u> that the factual claim was not discoverable through the exercise of due diligence. Second, § 2244(b)(2)(B)(ii) requires that 'the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish *by clear and convincing* evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.' (Emphasis added.) <u>Schlup</u> requires only that an applicant show that it is 'more likely than not' that no reasonable fact-finder would have found him guilty.

11cv2262

1   Cooper v. Woodford, 358 F.3d 1117, 1119 (9th Cir. 2004).

2       Petitioner's assertion that he is making a "gateway" claim under Schlup is correct

3 because he is alleging that he received ineffective assistance of counsel in violation of his

4 constitutional rights, and he claims he is actually innocent of voluntary manslaughter.  See

5 Cooper, 358 F.3d at 1119.  While Petitioner devotes little more than two short sentences

6 addressing his claim of actual innocence, he contends that he obtained evidence between

7 2003 and 2005 which demonstrates that he should have his claims considered by the court

8 because the evidence shows he was not guilty of voluntary manslaughter, but instead

9 should have been found guilty of justifiable homicide.  (Pet. 37; Reply 19, 20-21.)  For

10 purposes of a Schlup claim, the Court must consider the evidence presented at trial, and any

11 newly discovered evidence, regardless of its admissibility, in order to determine whether

12 Petitioner has shown that it is more likely than not that no reasonable fact-finder would

13 have found him guilty.  Schlup, 513 U.S. at 327.

14       Here, none of the evidence available at trial, or contained within Petitioner's current

15 pleadings, meets the more lenient Schlup standard.  The evidence presented here, in

16 consideration with that at trial, fails to show that it was more likely than not no reasonable

17 fact-finder would have found him guilty.  While there was sufficient evidence indicating a

18 metal pipe was found beneath the victim, witnesses provided contradictory information

19 concerning whether Stamps held the pipe as he advanced on Petitioner.  Morever, the

20 victim was shot at close range as he approached Petitioner, and the jury declined to find

21 Petitioner guilty of first or second degree murder, implicitly recognizing mitigating factors

22 including self defense in its reduction of the conviction to voluntary manslaughter.

23       Significantly, Petitioner has openly and consistently admitted he shot and killed

24 Stamps, and now argues he is not guilty of the degree of homicide for which he was

25 convicted as a result of counsel's failures, and therefore the Court cannot have confidence

26 in the outcome of his trial. However,  "[t]o ensure that the fundamental miscarriage of

27 justice exception would remain 'rare' and would only be applied in the 'extraordinary

28 case,' while at the same time ensuring that the exception would extend relief to those who

1  were truly deserving, this Court explicitly tied  the miscarriage of justice exception to the

2  petitioners innocence."  Schlup, 513 U.S. at 321.  Here, Petitioner does not claim he is

3  actually innocent of homicide, but only asserts that his new evidence demonstrates that he

4  was not guilty of voluntary manslaughter.  In Johnson, the petitioner conceded his guilt, but

5  attempted to argue that he was entitled to proceed through the Schlup gateway because the

6  court could not have confidence in the outcome of the proceedings due to ineffective

7  assistance of counsel.  541 F.3d 935.  The Ninth Circuit held that petitioner's admission of

8  guilt was fatal to his untimely habeas petition because the miscarriage of justice exception

9  is limited to "extraordinary cases where the petitioner asserts his innocence and establishes

10  that the court cannot have confidence in the contrary finding of guilt" noting that "[a]

11  petitioner who asserts only procedural violations without claiming actual innocence fails to

12  meet [the Schlup] standard."  Johnson, 541 F.3d at 937.

13      Just as the petitioner in Johnson, Petitioner here has admitted his guilt and therefore,

14  fails to demonstrate he suffered a miscarriage of justice.   In addressing Petitioner's

15  ineffective assistance of counsel claim, the California Court of Appeal similarly held:

16          Goodrum's assertions are speculative and not supported by the record
        or by his exhibits.  Goodrum does not deny he shot Stamps twice with a rifle
17      at close range. . . .   Goodrum has not shown that absent the purported errors
        by counsel he would have obtained a better result or that there was a
18      miscarriage of justice.

19  See In re Goodrum, D047569, slip op. 2, June 29, 2006.

20      The Court is confident in the outcome of the trial, and also finds that "no reasonable juror

21  would have found petitioner guilty beyond a reasonable doubt" in light of all the evidence

22  including the new evidence he tenders in support of the new claims.  Accordingly, his petition

23  cannot proceed through the Schlup gateway, and is **DISMISSED**.   See Schlup, 513 U.S. at 327.

24      **D.      Evidentiary Hearing Request**

25      Petitioner requests an evidentiary hearing to further develop the factual basis for his claims

26  because he is alleging facts, which if proven, would entitle him to relief under section 2254.

27  (Reply 14.)

28      The United States Supreme Court, in Cullen v. Pinholster, 563 U.S. __, 131 S. Ct. 1388,

1398 (2011), stated that a federal habeas court's review of a state court adjudication under 28

-19-

1   U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the

2   claim on the merits." Id.  Thus, new evidence presented at an evidentiary hearing in federal court

3   cannot be considered in assessing whether a state court decision

4   was contrary to, or involved an unreasonable application of, clearly established federal law under

5   § 2254(d)(1). Id.  Accordingly, Petitioner cannot further develop any facts supporting his claim of

6   ineffective assistance of counsel or improper sentence enhancement in this Court through an

7   evidentiary hearing.  The Court **DENIES** Petitioner's request for an evidentiary hearing.

8               **E.     Request for Discovery of Law Enforcement Officers**

9          Petitioner requests information regarding twenty law enforcement officers or forensic

10  specialists seeking contact information for people who have filed complaints with the police

11  department alleging acts "involving morally lax character, unnecessary violent acts of aggressive

12  behavior, acts of violence and/or attempted violence, acts of excessive force and /or attempted

13  excessive force, perjury and/or attempted perjury, falsifying official reports and /or attempted

14  fabrication of official reports and destroying evidence and/or attempted destruction of evidence."

15  (Motion for Discovery 2 [ECF No. 5].)

16         In light of the foregoing, Petitioner fails to establish entitlement to proceed with his

17  successive petition asserting ineffective assistance of counsel, illegal sentence enhancement and

18  cumulative error, which he seeks discovery to support.  Accordingly, the Court **DENIES**

19  Petitioner's discovery motion as moot.

20  **IV**.    **CONCLUSION AND ORDER**

21         For all the foregoing reasons, the Court finds Petitioner has failed to satisfy the

22  requirements of 28 U.S.C. section 2244(b)(2)(B) for proceeding in this Court with claims raised in

23  a second or successive petition, Petitioner has failed to satisfy the Schlup standard to avoid §

24  2244(b)(2)(B), has failed to demonstrate that he is entitled to an evidentiary hearing, and his

25  request for discovery concerning law enforcement officers is moot.  Accordingly, the Court

26  ///

27  ///

28  ///

    ///

1  **DISMISSES** the current Petition with prejudice and without leave to amend, **DENIES** Petitioner's

2  request for an evidentiary hearing, and **DENIES** Petitioner's request for discovery of law

3  enforcement personnel files.

4  **DATED:  June 13, 2012**

5  _Irma E. Gonzalez_

6  **IRMA E. GONZALEZ, Chief Judge**
   **United States District Court**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28