1
2
3
4
5
6
7

8         **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10   TONY GOODRUM,                          | Civil No.        11-2262 IEG (JMA)

11                          Petitioner,

12                                          | **ORDER:**

13                                          | **(1) GRANTING IN PART AND DENYING IN PART MOTION FOR CERTIFICATE OF APPEALABILITY**
14        vs.                               | **No.  48];**

15

16   MARTIN HOSHINO, Acting Secretary,      | **(2) DENYING MOTION FOR EXTENSION OF TIME TO FILE APPEAL AS MOOT [ECF No.  46]; and**
17

18                                          | **(3) DENYING MOTION FOR CERTIFICATE OF APPEALABILITY AS MOOT [ECF No.  44.]**
19                          Respondent.

20
21

22        Petitioner, Tony Goodrum (hereinafter "Petitioner"), filed a Motion for Certificate of

23   Appealability ("COA") to appeal the Court's dismissal of his Petition for Writ of Habeas Corpus in

24   the present case.  [ECF No.  46.]  Pending before the Court is also Petitioner's Motion for Extension

25   of Time to File Appeal [ECF No.  46], and a second Motion for Certificate of Appealability.[1]  [ECF

26   No.  48.]  After reviewing Petitioner's Motion for Certificate of Appealability and the Response by

27   Respondent, the Court **GRANTS** in part and **DENIES** in part Petitioner's Motion, **DENIES**

28

---

[1]The Court considers the later filed Motion for COA at the request of Petitioner. [ECF No.  43-1.]

1  Petitioner's Motion for Extension of Time to File Appeal as moot, and **DENIES** Petitioner's

2  duplicative Motion for Certificate of Appealability as moot.

3  I.      **PROCEDURAL HISTORY**

4          Petitioner has filed two Petitions for Writ of Habeas Corpus pursuant 28 U.S.C. §2254 in this

5  Court challenging his San Diego Superior Court conviction in case number SCD170068.  On April

6  23, 2007, Petitioner filed a petition in case number 07cv0752.  (*See* Petition *Goodrum v. Cate*,

7  07cv0752 IEG (JMA) Apr. 23, 2007.)  While the petition was pending, Petitioner filed an application

8  for leave to file a second or successive petition with the Ninth Circuit Court of Appeals in which he

9  raised claims he had not raised in his original petition.  (*See* Application *Goodrum v. Kramer*, 07-

10 72512 (9th Cir. Jun. 22, 2007).)  The Ninth Circuit denied Petitioner's application "without prejudice

11 to refiling should petitioner receive an unfavorable disposition of the first petition that is currently

12 pending in the district court."  (*See* Order *Goodrum v. Kramer*, 07-72512 Sep. 13, 2007.)   On

13 September 6, 2008, this Court denied the petition in case number 07cv0752.  (*See* Order, *Goodrum*

14 *v. Cate*, 07cv0752 IEG (JMA)  Nov. 12, 2008 [ECF No. 31].)   Petitioner filed a second application

15 for leave to file a second or successive petition with the Ninth Circuit Court of Appeals on October

16 29, 2010, which was granted on August 31, 2011.  (*See* Application for Leave to File Successive

17 Petition, *Goodrum v. Busby*, 10-73336, Oct. 29, 2010; Order *Goodrum v. Busby* 10-73336, Aug. 13,

18 2011.)

19         Following the Ninth Circuit's order, Petitioner filed a Petition for Writ of Habeas Corpus in

20 this Court on September 23, 2011, which was amended on November 9, 2011, in which he argued that

21 he was entitled to bring new claims challenging the state court conviction he previously challenged

22 in this Court because he had newly discovered evidence to support claims of ineffective assistance of

23 counsel and sentencing error.  [ECF Nos. 1, 10-1.]  Of importance to the disposition of the current

24 Motion, Petitioner argued in his new Petition that trial counsel was ineffective for failing to object to

25 the trial court's refusal to instruct the jury regarding "defense of habitation," failing to object to an

26 erroneous jury instruction which equated voluntary manslaughter with justifiable homicide, failing

27 to adequately investigate and locate a key witness at the preliminary hearing stage, and for failing to

28 investigate law enforcement misconduct regarding false preliminary hearing testimony, witness

1  tampering and mishandling exculpatory evidence.  (Id. at 67-69.)

2       On October 7, 2011, the parties were ordered by the Court to show cause as to whether the

3  claims in the Petition met the requirements of 28 U.S.C. § 2244(b)(2)(B) for filing a second or

4  successive petition. [ECF No. 3.] In his Reply, Petitioner stated that he was making claims of actual

5  innocence, in addition to his other claims raised in the Petition, and contended he was entitled to move

6  forward with his Petition regardless of whether it was subject to the standard for successive petitions

7  set forth in 28 U.S.C. § 2244(b) or the actual innocence exception enunciated in *Schlup v. Delo*, 513

8  U.S. 298 (1995).  (Reply 9.)[2]

9       By Order dated June 13, 2012, the Court found that Petitioner did not satisfy the requirements

10 of 28 U.S.C. § 2244(b)(2)(B) for filing a second or successive petition, and alternately determined that

11 Petitioner could not proceed on his actual innocence claim under *Schlup*.  [ECF No. 25.]  The Court

12 further denied Petitioner's request for discovery concerning law enforcement officers and denied his

13 request for an evidentiary hearing.

14      On July 9, 2012, Petitioner filed a Motion for Relief from Judgment, which the Court denied

15 by Order dated October 23, 2012.  [ECF Nos. 35, 39.]  On July 16, 2012, while his Motion for Relief

16 from Judgment was pending, Petitioner filed a Motion for Certificate of Appealability, Notice of

17 Appeal and a letter to the Court in which he stated that he filed the Motion for COA as a precautionary

18 measure to protect his ability to file a timely appeal, but that he did not want the Court to file the

19 Motion for COA if his Motion for Relief under Rule 60(b) provided additional time to file his appeal.[3]

20 [ECF No. 43-1.]  The Court filed this Motion for COA, despite Petitioner gaining additional time to

21 file his appeal due to his Rule 60(b) motion, on November 26, 2012, noting it was originally submitted

22 on July 16, 2012. [ECF No. 44.]  On November 26, 2012, Petitioner filed a Motion for Extension of

23 Time to File an Appeal.  [ECF No. 46.]  On November 28, 2012, Petitioner filed a second Motion for

24 COA.  [ECF No. 48.]  In light of Petitioner's request that his first Motion for COA not be filed if the

25 

26      [2]For ease of reference, the Court refers to the page numbers inserted by the Clerk's office electronic filing system.

27 

28      [3]Petitioner stated, "It was my intent that the time limit to file this COA request be put off until after my 'Rule 60(b) Motion' was heard.  Because I have not heard from the Court, I am filing this COA to protect my ability to file for COA.  If my 'Rule 60(b) Motion' is filed and does in fact prolong my time to file 'Notice of Appeal' please do not file this COA request." [ECF No. 43-1.]

1    Rule 60(b) Motion provided additional time within which to appeal, it is evident that Petitioner did
2    not want the Court to consider the first Motion for COA.  Accordingly, the Court considers only the
3    second Motion for COA.

4    **II.        CERTIFICATE OF APPEALABILITY**

5           A state prisoner may not appeal the denial of a section 2254 habeas petition unless he obtains
6    a certificate of appealability from a district or circuit judge.  28 U.S.C §2253(c)(1)(A).  A certificate
7    of appealability is authorized "if the applicant has made a substantial showing of the denial of a
8    constitutional right."  28 U.S.C.A. §2253(c)(2).   In deciding whether to grant a certificate of
9    appealability, a court must either indicate the specific issues supporting a certificate or state reasons
10   a certificate is not warranted.  *See United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).  The
11   analysis is more complex where, as in the present case, the district court denies the underlying Petition
12   on procedural grounds without reaching the merits of the constitutional claims.  In that instance,  "a
13   [certificate of appealability] should issue when the prisoner shows ... that jurists of reason would find
14   it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that
15   jurists of reason would find it debatable whether the district court was correct in its procedural ruling."
16   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added).  Thus, Section 2253(c)(3) requires
17   that the Court identify both the issue on which Goodrum made a substantial showing of the denial of
18   a constitutional right and the debatable procedural ruling.  *Gonzalez v. Thaler*, 132 S.Ct.  641, 648
19   (2012).

20   **III**.   **ANALYSIS**

21          Petitioner contends that the Court should grant his request for a COA because he has made a
22   substantial showing that he did not receive effective assistance of counsel as guaranteed by the
23   constitution, and also that it is debatable whether the Court correctly ruled that his claims could not
24   pass the *Schlup* actual innocence procedural threshhold.  (Mot. for COA 1, 3.)

25         **A.        Valid Constitutional claim**

26          In determining whether a prisoner has made the requisite showing that a constitutional right
27   has been denied for purposes of a COA, the district court must conduct "an overview of the claims in
28   the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336

(2003).   It is not necessary for a prisoner to demonstrate that he should prevail on the claims, but instead he must show that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate 'to deserve encouragement to proceed further.'" *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4 (1983).   However, "[t]his threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims" but instead "[a] prisoner seeking a COA must prove '"something more than the absence of frivolity"' or the existence of mere 'good faith' on his or her part." *Miller-El*, 537 U.S. at 337-38 (citing *Barefoot*, *supra*, at 893).

Petitioner asserts in his Petition that he received ineffective assistance of counsel at the preliminary hearing stage due to counsel's failure to conduct investigation into the whereabouts of key defense witnesses, Howard Herring aka "Polo," failure to investigate misconduct by San Diego Police Department Detective Rivera, and failure to investigate the destruction and improper preservation of potentially exculpatory evidence by law enforcement. (Pet. 15-16, 28, 36.) Petitioner further claims counsel's trial performance was deficient for his failure to object to the trial court's refusal to instruct the jury regarding the home bill of rights and to the constitutionally infirm instructions actually given.[4]   (*Id*. at 12-13.) Finally, Petitioner contends that counsel failed to cross-examine police officers about their failure to properly preserve the metal pipe as evidence, and failed to move for a mistrial regarding the destruction of that evidence.[5]   (*Id*. at 89-90.)

//

---

[4]In his Motion for COA, Petitioner has re-characterized several claims.  Petitioner argues he is entitled to a COA because (1) the conduct for which he was convicted, defense of habitation, fell within a state justification statute and therefore his conviction violates federal due process, (2) the trial court committed error in failing to instruct the jury with a "defense of habitation" instruction, and the court erroneously instructed the jury that "self defense is a crime," and (3) his federal due process rights were violated because the police destroyed exculpatory evidence including fingerprints on a weapon months after the potential value of the evidence was revealed. (Motion at 3.)  The claims in the Petition, as noted, are ineffective assistance of counsel.  Because the claims in the Petition are the claims with which Petitioner will proceed on appeal, the Court addresses their validity for purposes of Petitioner's request for a certificate of appealability rather than the claims as characterized in Petitioner's Motion for COA.  *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (a district court considering a COA request must conduct an overview of the claims in the petition).

[5]In his Petition, Petitioner also claims that trial counsel failed to move for discovery concerning law enforcement officers pursuant to *Pitchess v. Superior Court*, 11 C.3d 531 (1974).  (Pet. at 93.)  However, Petitioner does not specifically raise this issue as grounds for a COA, and the Court finds Petitioner has sufficiently shown the deprivation of his constitutional rights elsewhere as noted in this Order.  Therefore, the Court does not address this claim.

1          1.     <u>Ineffective assistance of counsel</u>

2          To establish ineffective assistance of counsel, a petitioner must first show his attorney's

3    representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S.

4    668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not

5    functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. He must

6    also show he was prejudiced by counsel's errors. Prejudice can be demonstrated by a showing that

7    "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

8    proceeding would have been different. A reasonable probability is a probability sufficient to

9    undermine confidence in the outcome." *Id.* at 694; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372

10   (1993). Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly

11   deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls

12   within a wide range of reasonable professional assistance." *Id.* at 686-87. Moreover, the Court need

13   not address both the deficiency prong and the prejudice prong if the defendant fails to make a

14   sufficient showing of either one. *Id.* at 697. For purposes of a motion for COA, Petitioner must show

15   at a minimum that it is debatable among jurists of reason whether he has provided sufficient evidence

16   of deficient performance and prejudice for the claim to move forward on review.

17         2.     <u>Claims</u>

18         Petitioner argues that trial counsel was ineffective for (1) failing to conduct meaningful

19   investigation at the preliminary hearing phase into the whereabouts of a key witness, Howard Herring,

20   and into law enforcement personnel mishandling of the weapon, (Pet. 47, 50, 58); (2) failing to

21   impeach law enforcement personnel regarding false and improper testimony at the preliminary hearing

22   (*Id.* at 51-53); (3) failing to move for expert assistance at trial regarding fingerprint analysis of the

23   metal pipe held by decedent (*Id.* at 78), and (4) failing to cross-examine law enforcement personnel

24   regarding their failure to properly confiscate and preserve evidence, and move for a mistrial on these

25   grounds. (*Id.* at 85.) Petitioner contends that these errors ensured Petitioner would be bound over

26   for murder rather than manslaughter, and that the jury convicted him of voluntary manslaughter rather

27   than finding he committed justifiable homicide, which clearly resulted in prejudice.

28   //

*a.*        *Failure to Adequately Investigate Key Witness*

Petitioner argues that trial counsel did not adequately investigate the location of a key defense witness, Herring, despite Petitioner's emphasis on Herring's importance to his case.

This Court noted in its  Order dated June 13, 2012, that Petitioner urged counsel, Douglas Brown,

> to interview Herring, sending Brown information about possible locations to find Herring, requesting counsel ask Herring during trial where he was during the preliminary hearing and whether he made the statements to Detective Rivera attributed to him. (*See* Affidavit re Diligence Regarding Testimony of Howard Herring 2-3.) Petitioner further contends he requested that counsel obtain a transcript of his prior convictions, and after getting no results from counsel, hired a private investigator who located Herring's mother in Temecula and procured his affidavit, along with a transcript of his prior convictions.

(Order at 12.)

Herring's testimony would have provided additional evidence that Stamps held a metal pipe as he advanced on Petitioner and additionally, would have provided support for Petitioner's assertion that Detective Rivera falsified information on the probable cause affidavit, manipulated Herring's testimony and that law enforcement officers contributed to him being unavailable for trial.  As this Court noted in its prior Order,

> In Herring's affidavit, he states he was interviewed by San Diego Police Detective Maria Rivera, on September 25, 2002, about the shooting involving Petitioner and victim Stamps. (Pet. Exhibit A at 3.)  Herring claims he was in jail, Edward Sergott, the District hiding a metal pipe behind his back "when he charged up to Mr. Goodrum" at the time Petitioner shot Stamps. (*Id.*) When Rivera spoke to Herring, a warrant was outstanding for his arrest, so Herring stated that he used his brother's name during the interview. (*Id.* at 3.)   When Rivera discovered his true name, she threatened to charge him with perjury for falsely identifying himself to a police officer. (*Id.*)  During Rivera' second interview with Herring on October 2, 2002, she recorded the conversation and allegedly became hostile to Herring when he stated that Stamps held the pipe during the altercation, saying he had not told her that before. (*Id.* at 4.)  According to Herring, he was arrested shortly thereafter and while he was in jail, Edward Sergott, the District Attorney's Supervising Investigator, came to see him and offered Herring an early release, participation in a treatment facility and money if Herring did not testify in Petitioner's case. (*Id.* at 5.)  Herring stated that he agreed not to testify, was released from jail, and entered drug treatment at "Set Free Ranch." (*Id.* at 6.)  While on a five day pass, Herring claims he was arrested and while he was in jail, Sergott and the Deputy District Attorney, N. Cooper, visited him in jail and told him that he would be served with a subpoena requiring him to testify, but that he should not "mention the pipe being in Mr. Stamps hand when he got shot because I would 'piss-off' the detective." (*Id.*)  On January 4, 2003, Herring was released from jail and returned to "Set Free Ranch," where Sergott and Cooper visited him. (*Id.* at 6.)   Sergott and Cooper instructed him that Rivera would not charge Herring with perjury if he did not testify that Stamps was holding the pipe in his hand, warning him to "watch it" and not add anything unnecessary to his testimony. (*Id.*)  Herring testified on February 25 and

26, 2003, stating that he "didn't have a good view of Mr. Stamps" and that he did not see the pipe in his hand when he was shot.  (*Id*. at 7.)

(*See* Order at 13, fn 7, filed Jun. 13, 2012 [ECF No. 25].)

Petitioner contends the complicity of Deputy District Attorney Cooper and Detective Sergott was evident when Cooper told the "magistrate judge" that she did not know where Herring was, and that Detective Sergott was actively seeking Herring, while "Herring's affidavit makes clear that he was in the 'SET FREE RANCH' at the time" of the preliminary hearing and that Sergott and Cooper visited him there.  (Pet. 63.)  Petitioner claims he would have been armed with this evidence during the preliminary hearing, had counsel conducted adequate investigation.  (*Id*.)

Although Petitioner claims that counsel did not attempt to locate Herring, it appears that counsel did conduct some investigation into Herring's whereabouts.  Petitioner provides the following statement by defense counsel from the preliminary hearing transcript:

> Your Honor, I had one other witness and that was Polo. (Herring) He was subpoenaed and served and he didn't show up today and we issued a warrant. I frankly have no idea where he is, and I have made a good faith effort to try and locate him. I feel he is a material witness for the preliminary hearing purposes as well as perhaps for some future proceedings. I don't know whether there is any likelihood that we will be able to find him in the near future, but I think under the circumstances given the nature of his testimony, so far as an offer of proof in the 115 testimony, that it would be our request for a continuance for a couple of weeks to see whether or not this warrant can be served and we can bring him in.

(Pet. at 62.)

From the evidence presented here, it appears Herring was at a drug rehabilitation facility called the Set Free Ranch, where San Diego Police detective Sergott and Deputy District Attorney Cooper visited him, prior to trial, yet law enforcement did not reveal this information and counsel did not adequately pursue the one witness who was most pivotal to the trial.  In light of the evidence presented, including Petitioner's declaration stating he urged counsel to find Herring and that he was able to locate the witness after hiring his own private investigator, and further, that Herring's whereabouts were known to the prosecution during the preliminary hearing phase, the Court finds that reasonable jurists could debate whether trial counsel conducted an adequate investigation into Herring's location.  //

//

11cv2262

b.   *Failure to Investigate Law Enforcement Misconduct*

Petitioner claims that  trial counsel failed to investigate his claims that Detective Rivera provided a false probable cause affidavit which erroneously stated Petitioner shot Stamps a second time after Stamps had fallen to the ground. (Pet. at 51.)   According to Petitioner, a police detective interviewed witness Lorraine Murray, decedent Stamp's girlfriend, who stated that she "heard a shot, decedent STARTED going down, there was another shot," but that she never told Detective Rivera that Stamps was on the ground when Petitioner fired the second shot.  (*Id*. at 51-52.)   Detective Rivera's affidavit stated "A witness said the suspect shot the victim.  The victim fell to the ground, the suspect then walked up to the victim and shot the victim a second time as the victim lay on the ground."  (*Id*. at 51.)

The importance of Detective Rivera's affidavit is clear because the trial court relied on it to bind Petitioner over on murder charges.  During the preliminary hearing, the court stated:

> This is not a murder case.  This is voluntary manslaughter. . .Although I really question Lorraine Murray's [decedent's girlfriend] testimony.  It's backed up by [Herring], who at least from what we know independently of him not having been before the court, it doesn't appear an axe to grind on his part against the [defendant].  In fact, the victim had said some angry words towards him, it appears.  Her [Murray's] testimony about there not being a pole is backed up by both [Herring] and Mr.  Egan. So, therefore, I have to bind over...

(Pet. at 48.)

It was incumbent on defense counsel to adequately investigate the source of testimony used to support the probable cause hearing and it appears from the evidence Petitioner proffers here, that counsel did not conduct a sufficient inquiry.   On this evidence, Petitioner has shown that reasonable jurists could debate whether counsel's failure to investigate Herring's whereabouts and Detective Rivera's alleged misconduct constituted deficient performance and prejudiced Petitioner as the outcome of the trial  might have been different had Petitioner been charged with manslaughter instead of murder.  In addition, if the actions of Detective Rivera and Detective Sergott and Deputy District Attorney Cooper contributed to Herring
providing false testimony and being unavailable for the preliminary hearing as Herring claims in his affidavit, a reasonable jurist could find it debatable whether the failure to locate Herring and investigate this conduct prejudiced Petitioner.

1    In light of the above, the Court **GRANTS** Petitioner's Application for Certificate of

2  Appealability on the narrow issue as to whether Petitioner was deprived of his constitutional right to

3  effective assistance of counsel for trial counsel's failure to investigate Herring's whereabouts and law

4  enforcement misconduct including providing a false probable cause affidavit, contributing to making

5  witness Herring unavailable, and coercing Herring to alter his testimony.

6                                    *c.    Defense of Habitation Instruction*

7    Petitioner contends his constitutional rights were violated because counsel failed to object to

8  the trial court's refusal  to instruct the jury with a defense of habitation instruction.  In Petitioner's

9  prior case, 07cv00752 IEG (JMA), challenging the same conviction he challenges here, he was granted

10  a COA on the similar issue as to whether the trial court's refusal to instruct the jury regarding

11  justifiable homicide pursuant to California Penal Code sections 197 and 198.5[6] raised a valid claim.

12  (*See* Motion for COA at 25, *Goodrum v. Cate*, 07cv0752 IEG (JMA) [ECF No. 35]).  This Court

13  found that there was enough evidence to suggest that a reasonable jurist could find that the trial court

14  erred in refusing to give the "Use of Force Within Residence" jury instruction and found that the claim

15  warranted the issuance of a COA.  (*See* Order filed Nov. 12, 2008 in *Goodrum v. Cate*, at 4.)

16    On appeal, the Ninth Circuit affirmed the Court's denial of the petition, finding that Petitioner

17  was not denied due process due to the trial court's failure to instruct the jury on the use of force within

18  a residence pursuant to California Penal Code § 198.5, holding in pertinent part:

19          [T]he lack of a § 198.5 instruction did not prevent Petitioner from presenting
        any of his self-defense theories to the jury. *See Bradley v. Duncan*, 315  F.3d 1091,
20      1099 (9th Cir. 2002) ("[T]he state court's failure to correctly instruct the jury on [a]
        defense may deprive the defendant of his due process right to present a defense."
21      (citation omitted)). Petitioner's self-defense theory did not hinge on the mere fact that
        Stamps was an intruder in his home, but rather Stamps's actual threats and violent
22      conduct; Petitioner argued this theory, albeit unsuccessfully, to the jury in his
        summation. Petitioner also presented his defense of- residence theory to the jury, even
23      without the § 198.5 instruction, by emphasizing the fact that the events took place
        inside his residence.
24
25          The trial court properly instructed the jury on both the general principles of
        self-defense—including the government's burden to disprove self-defense beyond a
26

27    ───────────────
     [6]"Any person using force intended or likely to cause death or great bodily injury within his or her
     residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to
28   self, family, or a member of the household when that force is used against another person, not a member of the
     family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence
     and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred." Cal.
     Penal Code. § 198.5.

1   reasonable doubt—as well as the presumption of a defendant's innocence. Indeed, a
2   § 198.5 instruction is redundant where the trial court properly instructs the jury on
    self-defense. *See People v. Owen*, 277 Cal. Rptr. 341, 347 (Cal. Ct. App. 1991). It
3   follows that since there was no instructional error, there was no due process violation.

4   (*See* Mandate 3-4, *Goodrum v. Brown*, 08-56901, (9th Cir. Jul. 15, 2010).)

5          In light of the fact that the Ninth Circuit found no error in the absence of the defense of

6   habitation instruction, and moreover, that Petitioner argued his theory to the jury, Petitioner cannot

7   demonstrate that jurists of reason would find it debatable whether Petitioner was prejudiced by

8   counsel's failure to object to the trial court's refusal to instruct on defense of habitation.   Petitioner

9   has not shown that this constitutes a valid claim of the denial of a constitutional right.   Therefore,

10  Petitioner is not entitled to a COA on this ground.

11                                 *d.*      *Erroneous instruction*

12         Petitioner argues that the court erroneously instructed the jury that "self defense is still a crime,

13  voluntary manslaughter," and rather than object, "[d]efense counsel stood mute."   (Id. at 123, 132.)

14  Petitioner contends that he was prejudiced by this instruction because the jury was forced into

15  believing that not only "could they" but that "they must" convict Petitioner of voluntary manslaughter,

16  an unlawful killing, under the circumstances. (Pet. at 123-28.)   According to Petitioner, the effect of

17  this error was magnified  because he took the stand and admitted he fatally shot the decedent, yet he

18  did not have the benefit of proper instruction regarding justifiable homicide while defending one's

19  home. (*Id*. at 96.)   Petitioner contends he was not apprised of the consequences of his testimony by

20  trial counsel, and was instead misled into unknowingly confessing to a crime he believed was justified

21  under California law.  (*Id*. at 97.)

22         In *Henderson v. Kibbe*, 431 U.S. 145 (1977), the Supreme Court stated the standard governing

23  jury instructional error:

24          The burden of demonstrating that an erroneous instruction was so prejudicial that it
            will support a collateral attack on the constitutional validity of a state court's judgment
25          is even greater than the showing required to establish plain error on direct appeal.  The
            question in such a collateral proceeding is "whether the ailing instruction by itself so
26          infected the entire trial that the resulting conviction violates due process," *Cupp v.
            Naughten*, 414 U.S. [141], at 147, 94 S.Ct., at 400, 38 L.Ed.2d 368, not merely whether
27          "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at
            146, 94 S.Ct., at 400.  [T]he . . . burden is especially heavy [when] no erroneous
28          instruction was given . . . . An omission, or an incomplete instruction, is less likely to
            be prejudicial than a misstatement of the law.

11cv2262

1    *Id.* at 154.

2         The allegedly erroneous jury instruction cannot be judged in isolation. *Estelle v. McGuire*, 502

3    U.S. 62, 72 (1991).  Rather, it must be considered in the context of the entire trial record and the

4    instructions as a whole.  *Id.*  (*citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973).)

5         Under California law, voluntary manslaughter is the unlawful killing of another intentionally,

6    but "upon a sudden quarrel or heat of passion."  *See* Cal.  Penal Code § 192 (a).  In contrast,

7    "[h]omicide is ... justifiable when committed by any person. . . [w]hen committed in defense of

8    habitation, property, or person, against one who manifestly intends or endeavors, by violence or

9    surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous

10   or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any

11   person therein."  *See* Cal.  Penal Code § 197.  Petitioner contends that due to the erroneous instruction,

12   it is "highly likely" that the jury found him guilty of manslaughter based on "heat of passion," "sudden

13   quarrel" or "self-defense" instead of finding him guilty of justifiable homicide.

14        For purposes of determining whether a COA should issue, this Court must not delve too deeply

15   into the factual or legal underpinnings of the claim, however, Petitioner must demonstrate that the

16   claim is not frivolous and deserves encouragement to proceed.  *Barefoot*, 463 U.S. at 893.  Here, it is

17   impossible to determine whether the court correctly instructed the jury on the elements of voluntary

18   manslaughter versus justifiable homicide because the Court cannot inquire in depth into the factual

19   or legal substance of the claim by reviewing the record and instructions.  *See Miller-El*, 537 U.S. at

20   336-37 (section 2253(c) forbids full consideration of the factual or legal bases supporting the claims.)

21   However, Petitioner has provided portions of the record as evidence, and has consistently claimed he

22   acted in self-defense.  As noted above, the Ninth Circuit reviewed the self defense instructions given

23    in Petitioner's case and determined they were proper.  (*See* Memorandum at 3-4, *Goodrum v. Brown*,

24   08-56901, (9th Cir.) Jul.  15, 2010.)  Because both voluntary manslaughter and justifiable homicide

25   rest on theories of self-defense, it follows that the issue of whether trial counsel's failure to object to

26   the allegedly infirm instruction prejudiced Petitioner is not debatable among jurists of reason because

27   the jury received proper instruction on self-defense and this sole instruction could not have infected

28   the trial to the extent that the entire conviction would have violated due process.

1    Similarly, Petitioner has not shown that counsel's alleged failure to advise him of the

2    consequences of taking the stand raises a constitutional claim worthy of moving forward.  This is

3    because even if counsel's failure to advise him of the consequences constituted deficient performance,

4    jurists of reason would not debate whether counsel's performance prejudiced Petitioner because he

5    was able to present his theory of self-defense to the jury.  In summation, counsel was able to balance

6    the weight of Petitioner's admission of intentionally shooting the decedent with evidence of the

7    victims's violent behavior in the home.  Moreover, the jury was properly instructed on self defense

8    as noted by the Ninth Circuit.  Therefore, jurists of reason would not find it debatable whether

9    Petitioner was prejudiced by taking the stand without the benefit of proper advisement by his defense

10   counsel.  In light of the above, this claim does not deserve encouragement to proceed further.

11        *e.*     *Failure to Move for Expert Assistance at Trial Regarding Metal Pipe*

12        Petitioner contends that he was prejudiced by counsels' failure to move for an expert witness

13   to analyze the metal pipe for fingerprints and by counsel's failure to conduct proper cross-examination

14   of the prosecution's expert witness regarding fingerprint evidence on the weapon, because a key issue

15   at the preliminary hearing and trial was whether the victim held the pipe as he lunged at Petitioner.

16   (Pet. at 79, 82.)  When Petitioner asked trial counsel why he did not move for expert assistance, trial

17   counsel represented to Petitioner that he had consulted an expert and the only bloody fingerprint found

18   on the weapon belonged to a police officer.  (*Id*. at 83.)  However, Petitioner contends the expert to

19   which counsel referred was actually the prosecution's witness, and she never said the print located on

20   the weapon belonged to an officer.  (*Id*.)

21        Petitioner submitted a portion of the trial record in support of this claim in his Petition in which

22   the prosecutor stated that one print was lifted from the pipe and "they compared it to the victim and

23   compared it to the defendant and they have not come up with a match for either person.  They want

24   to run more tests.  They don't want to give a definitive no on either one yet.  But they said it would

25   take a couple more hours because they have to redo it through the computer."  (*Id*. at 78.)  The

26   prosecution was prepared to rest after this testimony, and defense counsel deferred to the state's

27   witness and did not pursue the evidence further.  (*Id*. at 79.)

28   //

1    Petitioner is correct that a key issue at trial was whether Stamps held a pipe as he approached

2    Petitioner.  This Court previously noted that a number of witnesses stated that Stamps was not holding

3    anything in his hands during the altercation, while Petitioner claimed Stamps had a metal pipe in his

4    hands, and the court of appeal stated that a pipe was found near Stamps's body, implying Stamps held

5    the pipe as he approached Petitioner and dropped it when he was shot.  *(See People* v. *Goodrum*, 2004

6    WL 1854188, *1-2 (Cal.App. 4 Dist., 2004).)  The new evidence contained within Herring's affidavit

7    supports the conclusion that Stamps held the pipe, but the trial court was deprived of that information

8    during the preliminary hearing and at trial, allegedly due to counsel's failure to discover the actions

9    of Detective Rivera, Depute District Attorney Cooper and Detective Sergott regarding Herring.

10   Additional proof of Stamps' fingerprints on the weapon would have potentially altered the outcome

11   of the preliminary hearing and trial because it was further evidence that Petitioner acted in self-defense

12   as Stamps approached him with the pipe.

13   Similarly, Petitioner's related claim that counsel was ineffective for failing to investigate

14   alleged mishandling and preservation of the pipe warrants encouragement to proceed, as there is

15   evidence that Petitioner immediately notified police upon their arrival at the crime scene that the pipe

16   was used by the victim in the attack, but that the pipe was thrown to the wet grass as the police

17   processed the scene, providing an opportunity for any bloody fingerprints to be degraded if not

18   completely obliterated.   (Pet. at 50.)  Petitioner argues that counsel should have conducted cross-

19   examination of police witnesses regarding the pipe and moved for a mistrial on the basis of the

20   mishandling of the metal pipe.

21   According to Petitioner, the trial transcript stated that Detective Rivera was assigned to process

22   the scene and that she noted there was a "bloodstained" metal pipe laying in the ground when she

23   arrived.  (*Id*. at 50.)  Fingerprints were not lifted from the pipe at this time, but Detective Rivera

24   "submitted a written request to examine the BLOOD on the pipe." (*Id*. at 51.)  Petitioner contends the

25   blood samples were removed using cotton swabs which further degraded any prints located on the

26   pipe.  (*Id*.)   Compounding the prejudicial effect of the mishandled evidence, the coroner washed

27   Stamps' bloody hands and released a photo of the clean hands which was used at trial, which further

28   supported the prosecution's contention that the victim did not hold a pipe as he approached Petitioner.

1    (*Id.* at 54.)   As such, reasonable jurists could debate whether counsel's failure to pursue further

2    investigation of fingerprints and his failure to conduct adequate cross-examination of the police

3    department witness prejudiced Petitioner because the preliminary report on the lifted print was

4    inconclusive and further investigation might  have identified the victim as the source of the print, in

5    which case the jury would have had further evidence supporting Petitioner's claims of self-defense.

6         As such, Petitioner has demonstrated that the claims deserve encouragement to proceed further

7    and the Court **GRANTS** a COA on the limited issues of police mishandling of the pipe and counsels'

8    failure to move for an expert, properly cross-examine the state's witness and move for a mistrial on

9    these grounds.

10                B.    ***Schlup***

11        The Court turns to the issue of whether Petitioner has demonstrated that jurists of reason would

12   find it debatable whether the Court was correct in its procedural ruling finding that his claims were

13   not entitled to pass through the actual innocence procedural gateway under *Schlup*.  *See Slack*, 529

14   U.S. at 484.

15        Under *Schlup* a petitioner should be allowed to pass through the threshhold and argue the

16   merits of the claims in his petition if he  "presents evidence of innocence so strong that a court cannot

17   have confidence in the outcome of the trial unless the court is also satisfied that the trial

18   was free of nonharmless constitutional error. . ."  *Schlup*, 513 U.S. at 316.  "To be credible, such a

19   claim requires petitioner to support his allegations of constitutional error with new reliable evidence

20   ... that was not presented at trial."  *Id.* at 324.  It is not enough that the evidence shows the existence

21   of a reasonable doubt; the petitioner must show "that it is more likely than not that 'no reasonable

22   juror' would have convicted him." *Id.* at 329.  To meet the threshhold requirement, Petitioner must

23   convince "the district court that, in light of the new evidence, no juror, acting reasonably, would have

24   voted to find him guilty beyond a reasonable doubt." *Id.*  To overcome the procedural bar, Petitioner's

25   ineffective assistance of counsel claim must be so substantial as to bring the case "within the 'narrow

26   class of cases ... implicating a fundamental miscarriage of justice.' " *Id.* at 315, (quoting *McCleskey*

27   *v. Zant*, 499 U.S. 467, 494 (1991)).

28   //

1        In the present case, Petitioner contends that the new evidence, including statements from key

2   witnesses contradicting their trial testimony, testimonial evidence about law enforcement misconduct,

3   and the mishandling of potentially exculpatory evidence, is evidence of innocence so substantial that

4   the Court cannot have confidence in the outcome of Petitioner's trial.  (Motion for COA at 7-8, 17.)

5   According to Petitioner, the evidence demonstrates that he was innocent of voluntary manslaughter,

6   the crime with which he was found guilty, and instead committed justifiable homicide.  (*Id*.)

7        In its Order denying Petitioner's Rule 60(b) Motion,   the Court held that Petitioner's

8   ineffective assistance of counsel claims were not entitled to proceed through the *Schlup* portal because

9   "a properly instructed jury, presented with all the evidence, . . . would not have returned a different

10   verdict."  (*See* Order at 8 [ECF No. 39].)  However, the COA standard differs importantly from the

11   Rule 60(b) standard, and requires only that "jurists of reason would find it debatable whether the

12   district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  If the claims presented here

13   "deserve encouragement to proceed," it is appropriate for a district court to grant a COA.  *See*

14   *Barefoot,* 463 U.S. 880, 893 n. 4(1983).  Under the COA standard, jurists of reason could debate

15   whether Petitioner's actions constituted justifiable homicide and not voluntary manslaughter in light

16   of the newly proffered evidence contained within Herring's affidavit.  This is particularly true in light

17   of the fact that counsel did not investigate a key defense witness who would have provided eye-

18   witness testimony as to the victim holding a weapon, and estimony concerning law enforcement

19   personnel misconduct which included manipulating Herring to testify falsely at trial.  It follows that

20   Petitioner's claim concerning the district court's procedural ruling prohibiting Petitioner from moving

21   his claims through the *Schlup* portal deserves encouragement to proceed.

22        Accordingly, Petitioner has met the two pronged *Slack* standard for issuance of a COA because

23   he has presented sufficient evidence that jurists of reason would find it debatable whether he received

24   effective assistance of counsel and whether the district court was correct in holding that Petitioner's

25   actual innocence claims could not proceed through the *Schlup* gateway.  *See Slack*, 529 U.S. at 484.

26   //

27   //

28   //

11cv2262

1    IV.    **CONCLUSION AND ORDER**

2         For the foregoing reasons, the Court **GRANTS** Petitioner's Certificate of Appealability on the

3    narrow ground that trial counsel's failure to investigate Herring's location, law enforcement

4    misconduct and pursue fingerprint evidence on the metal pipe might have violated Petitioner's right

5    to due process under the Sixth and Fourteenth Amendments, and further, that the Court's

6    determination that the claims were not entitled to pass through the *Schlup* actual innocence gateway

7    was debatable among jurists of reason. [ECF No. 48.]  The Court **DENIES** Petitioner's Motion for

8    Extension of time to File an Appeal as moot. [ECF No. 46.]  The Court further **DENIES** Petitioner's

9    previous Motion for COA as moot. [ECF No. 44.]

10   **IT IS SO ORDERED.**

11   **DATED:** February 8, 2013

12   

13                                          Hon. Irma E. Gonzalez

14                                  **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv2262